IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Luther Jernigan, | ) | No. CV-08-838-PHX-MHM (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Charles L. Ryan, et al. | ) ) | |
| Respondents. | ) ) ) | |

This matter is before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus.  (docket # 6)  Respondents[1] have filed an Answer, docket # 13, to which Petitioner has replied, docket # 17.

**I. Factual and Procedural Background**

    **A.  Factual Background**

On August 3, 2005, a Maricopa County grand jury indicted Petitioner on one count of fraudulent schemes and artifices, one count of theft, one count of taking the identify of another, and three counts of forgery.  (Respondents' Exh. A)  The State also alleged that Petitioner had a 1994 felony conviction for attempted theft, a class 4 felony.  (Respondents' Exh. B)  The State subsequently amended the allegation of historical priors, asserting that Petitioner had three additional prior convictions in federal district court for: (1) dealing in

---

[1]  Petitioner named Dora B. Schriro as a respondent in this matter.  Charles L. Ryan, the current director of the Arizona Department of Corrections, is substituted for Dora B. Schriro pursuant to Fed.R.Civ.P. 25(d).

1    counterfeit obligations; (2) conspiracy to possess cocaine; and (3) unlawful possession of a

2    firearm.  (Respondents' Exh. C)  The State also alleged that Petitioner committed the

3    offenses charged in the indictment while on release from the federal convictions.

4    (Respondents' Exh. D)

5           On December 7, 2005, Petitioner entered into a written plea agreement pursuant to

6    which he pled guilty to: Amended Count 1, attempt to commit fraudulent schemes and

7    artifices, a class 3 felony, with one prior felony conviction; and Amended Count 2, theft, a

8    class 3 felony, non-dangerous and non-repetitive.  (Respondents' Exh. E)  In the plea

9    agreement, Petitioner admitted his 1994 felony conviction for attempted theft.

10   (Respondents' Exh. E)  In exchange for Petitioner's plea, the remaining charges were

11   dismissed.  (*Id.*)

12          At the December 7, 2005 change-of-plea hearing, the court[2] inquired whether

13   Petitioner had read the plea agreement, discussed it with counsel, and understood its terms.

14   (Respondents' Exh. F at 4-6)  Petitioner responded affirmatively.  (*Id.*)  Petitioner stated that

15   he understood the plea agreement and that it contained everything to which he had agreed.

16   (*Id.* at 6)  Petitioner further stated that he entered the plea voluntarily, of his own free will,

17   and that he was not forced or threatened to plead guilty.  (Respondents' Exh. F at 6) The

18   Court explained Petitioner's sentencing exposure on both counts, including a possible

19   aggravated sentence of 16.5 years followed by community supervision.  (Respondents' Exh.

20   F at 6-7)  Petitioner stated that he understood the sentencing range.  (*Id.*)   The court further

21   explained the rights Petitioner was waiving by pleading guilty, and Petitioner indicated that

22   he wished to forego those rights and enter a plea.  (Respondents' Exh. F at 9-10)

23          Petitioner's counsel, Susan Maga, presented the following facts in support of

24   Petitioner's guilty pleas.  (Respondents' Exh. F at 2)   As to Amended Count 1, Petitioner

25   and co-defendant Tina Ricketts acted in concert to complete a mortgage with CSI Mortgage

26   and Prescott Title on the Scottsdale home of Lucinda Maxfield, without Maxfield's

27   ───────────────

28          [2]  The Honorable Richard Gama presided.

1   knowledge or permission. (Respondents' Exh. F at 11)   Petitioner had Ricketts pretend to

2   be Maxfield and provided her with the blonde wig she wore when completing the mortgage

3   paperwork. (Respondents' Exh. F at 11)   After Petitioner and Ricketts received the money

4   from the mortgage, Ricketts again pretended to be Maxfield when she obtained a wire

5   transfer for some of the proceeds ($125,000) from the mortgage to a Bank of America

6   account in the name of Richard Self (the "Self account"). (*Id.*)   The Self account was

7   actually controlled by Petitioner. (Respondents' Exh. F at 11)   Additionally, both Ricketts

8   and Petitioner were aware that David Robinson was paid money from the mortgage

9   proceeds, in exchange for his agreement to conceal the mortgage fraud from Maxfield.

10   (Respondents' Exh. F at 12)   Petitioner admitted that the facts counsel provided in support

11   of Amended Count 1 were true. (Respondents' Exh. F at 12)

12       In support of Amended Count 2, counsel stated that Petitioner committed theft by

13   knowingly controlling, without lawful authority, CSI Mortgage's cash, with the intent of

14   permanently depriving CSI of the money. (Respondents' Exh. F at 13)   Petitioner

15   controlled the money through the Richard Self bank account, to which Petitioner had access.

16   (*Id.*) Petitioner also admitted that the theft involved sufficient monetary value to make the

17   crime a class 3 felony. (Respondents' Exh. F at 13)   Petitioner again attested to the truth of

18   the facts counsel provided in support of Amended Count 2. (*Id.*)

19       The court found that Petitioner made the guilty pleas knowingly, intelligently, and

20   voluntarily and accepted his pleas. (Respondents' Exh. F at 14)

21       Petitioner subsequently moved to withdraw from the plea agreement on the ground

22   that the factual basis in support of Amended Count 1 was inaccurate.   Due to differences that

23   arose between Petitioner and his counsel over this issue, the court allowed Susan Maga to

24   withdraw and replaced her with Terri Capozzi. (Respondents' Exhs. G, H)

25       At the beginning of the May 12, 2006 sentencing hearing, the court addressed the

26   motion to withdraw the guilty pleas. (Respondents' Exh. I at 3)   Petitioner's counsel,

27   Capozzi, requested a continuance so she could secure the presence of four individuals whose

28   testimony Petitioner wanted to present in support of his motion to withdraw. (Respondents'

1   Exh. I at 4)   The court denied the motion to continue, noting that the matter had previously

2   been continued.  (*Id*.)   The court clarified that the motion to withdraw was before the court

3   for "oral argument" and declined counsel's request that Petitioner testify.  (Respondents'

4   Exh. I at 4)   During oral argument, Petitioner's then-counsel, Capozzi, argued that former

5   counsel, Maga, had permitted Petitioner to plead guilty based on "an incorrect and

6   inaccurate factual basis," which that constituted the "manifest injustice that's required to set

7   aside a guilty plea." (Respondents' Exh. I, Tr. 5/12/06 at 7)   Counsel explained that

8   Petitioner's "position is and has been . . .that he never provided a wig or disguise for Tina

9   Ricketts." (Respondents' Exh. I at 6)  Counsel Capozzi further argued that Petitioner had

10  conveyed this information to his former counsel, Maga, but she ignored him.  (Respondents'

11  Exh. I at 7)  The State argued that, during the change-of-plea proceeding, Petitioner was

12  given several opportunities to express any disagreement with the asserted factual basis, but

13  said nothing.  (Respondents' Exh. I 8-10)  The court found that Petitioner did not satisfy

14  his burden of showing manifest injustice, and denied the motion to withdraw from the plea

15  agreement.  (Respondents' Exh. I at 12)

16      The court then proceeded to sentencing.   The court found that Petitioner had been

17  convicted in 1994 of the alleged prior felony.  (Respondents' Exh. I at 13) The State

18  requested an "extremely aggravated term" based on Petitioner's background and the facts of

19  the case.  (Respondents' Exh. I at 15-17)   Defense counsel argued that the court should

20  impose "no more than [the] presumptive" sentence.  (*Id*. at 22)   The court concluded that an

21  aggravated sentence was appropriate on Count 1, finding three aggravating factors: the prior

22  felony conviction admitted in the plea agreement, the presence of an accomplice, and the

23  offense was for pecuniary gain.  (Respondents' Exh. I at 22)   Accordingly, the court

24  sentenced Petitioner to an aggravated term of 16.25 years' imprisonment on Count 1.  (*Id*. at

25  23), see A.R.S. § 13-702.01(C)(1).

26      On Count 2, the court suspended the imposition of sentence and placed Petitioner on

27  supervised probation for 5 years to begin after Petitioner's discharge from prison on Count

28  1.  (*Id*. at 25)

**B.  First Post-Conviction Proceeding**

On June 16, 2006, Petitioner filed a notice of post-conviction relief and requested appointment of counsel.  (Respondents' Exh. J)   The court appointed counsel who filed a petition for post-conviction relief on December 20, 2006.  (Respondents' Exh. K) The trial court denied relief on April 12, 2007.  (Respondents' Exh. L)

On May 31, 2007, Petitioner filed a petition for review in the Arizona Court of Appeals, 1 CA-CR 07-0472 PRPC.  (Respondents' Exh. M)  On February 5, 2008, the Court of Appeals denied review.  (Respondents' Exh. N)  Petitioner did not seek review in the Arizona Supreme Court.  (docket # 6 at 6-9)

**C.  Second Post-Conviction Proceeding**

On August 27, 2007, Petitioner filed a second petition for post-conviction relief.  (Respondents' Exh. O)  On September 21, 2007, the trial court found Petitioner's claims precluded, pursuant to Ariz.R.Crim.P. 32.2(a).  (Respondents' Exh. P)  The court also rejected Petitioner's argument that "newly-discovered" facts entitled him to relief.  The court noted that Petitioner could have discovered the information before pleading guilty, and that by pleading guilty, he waived his right to contest the evidence against him.  (*Id.*)

On or about October 16, 2007, Petitioner filed a *pro se* petition for review to the Arizona Court of Appeals, 1 CA-CR 07-0872 PRPC.  (Respondents' Exh. Q)  On March 12, 2008, the Arizona Court of Appeals denied review.  (Respondents' Exh. R)  Petitioner did not seek review in the Arizona Supreme Court.  (docket # 6 at 6-9)

**D.  Petition for Writ of Habeas Corpus**

On August 15, 2008, Petitioner filed a timely amended petition for writ of habeas corpus in this Court.  (docket # 6; docket # 13 at 6)  Petitioner raises the following claims: (1) "Violation of due process of law under the Fourteenth Amendment to the United States Constitution.  Petitioner can show manifest injustice has occurred and trial court refused to hold an evidentiary hearing to allow Petitioner to withdraw from the plea;" (2) Petitioner received ineffective assistance of counsel and suffered a "manifest injustice" because counsel provided an incorrect factual basis for his guilty plea; and (3) Petitioner received

1    ineffective assistance of counsel because counsel (a) failed to subpoena witnesses to testify

2    in support of his motion to withdraw his guilty plea, and (b) failed to object to the

3    aggravated sentence. (docket # 6)

4    **II.  Exhaustion**

5            Respondents assert that Petitioner has procedurally defaulted Ground Two and a

6    portion of Ground Three, and that those claims are barred from federal habeas corpus

7    review.   As discussed below, the Court agrees.

8            **A.  Relevant Law**

9            A federal court may not grant a petition for writ of habeas corpus unless the petitioner

10   has exhausted the state remedies available to him.  28 U.S.C. § 2254(b).  When seeking

11   habeas relief, petitioner bears the burden of showing that he has properly exhausted each

12   claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*). The exhaustion

13   inquiry focuses on the availability of state remedies at the time the petition for writ of habeas

14   corpus is filed in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  The prisoner

15   "shall not be deemed to have exhausted . . . if he has the right under the law of the State to

16   raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  In other

17   words, proper exhaustion requires the prisoner to "give the state courts one full opportunity

18   to resolve any constitutional issues by invoking one complete round of the State's

19   established appellate review process."  *O'Sullivan*, 526 U.S. 845. "One complete round"

20   includes filing a "petition[] for discretionary review when that review is part of the ordinary

21   appellate review procedure in the State."  *Id.*   State prisoners may skip a procedure

22   occasionally employed by a state's courts to provide relief only if a state law or rule

23   precludes use of the procedure, or the "State has identified the procedure as outside the

24   standard review process and has plainly said that it need not be sought for purposes of

25   exhaustion. *Id.* at 848, 850.

26           To exhaust state remedies, a petitioner must afford the state courts the opportunity to

27   rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

28   court in a procedurally appropriate manner.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989);

1    *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the

2    necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate

3    state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona,

4    unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if

5    the petitioner has presented his federal claim to the Arizona Court of Appeals either on

6    direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles*, 483 F.Supp.2d

7    925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

8    Contrary to Respondents' assertion, Petitioner was not required to present his claims to the

9    Arizona Supreme Court.

10            In addition to presenting his claims to the proper court, a state prisoner must fairly

11   present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly

12   presented" in state court only if a petitioner has described both the operative facts and the

13   federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that

14   all of the facts necessary to support the federal claim were before the state court or that a

15   "somewhat similar" state law claim was raised. *Reese*, 541 U.S. at 28 (stating that a

16   reference to ineffective assistance of counsel does not alert the court to federal nature of the

17   claim). Rather, the habeas petitioner must cite in state court to the specific constitutional

18   guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d

19   895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such

20   as due process, equal protection, and the right to a fair trial, are insufficient to establish fair

21   presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th

22   Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*,

23   223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal

24   to a constitutional guarantee," such as a naked reference to "due process," or to a

25   "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of

26   the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152,

27   162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be

28   decided "on the same considerations" under state or federal law, the petitioner must make

1    the federal nature of the claim "explicit either by citing federal law or the decision of the

2    federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim

3    to the state court if the court must read beyond the pleadings filed in that court to discover

4    the federal claim. *Baldwin*, 541 U.S. at 27.

5         In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

6    satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

7    through the proper vehicle, and (3) by providing the proper factual and legal basis for the

8    claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)(citations omitted).

9         A habeas petitioner's claims may be precluded from federal review in either of two

10   ways. First, a claim may be procedurally defaulted in federal court if it was actually raised

11   in state court but found by that court to be defaulted on state procedural grounds such as

12   waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

13   at 729-30. Thus, a state prisoner may be barred from raising federal claims that he did not

14   preserve in state court by making a contemporaneous objection at trial, on direct appeal, or

15   when seeking post-conviction relief. *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)

16   (stating that failure to raise contemporaneous objection to alleged violation of federal rights

17   during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d

18   1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

19   Appeals held that habeas petitioner had waived claims by failing to raise them on direct

20   appeal or in first petition for post-conviction relief.) If the state court also addressed the

21   merits of the underlying federal claim, the "alternative" ruling does not vitiate the

22   independent state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer

23   v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

24   of counsel claims "barred under state law," but also discussed and rejected the claims on the

25   merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

26   and the claims were procedurally defaulted and barred from federal review). A higher

27   court's subsequent summary denial of review affirms the lower court's application of a

28   procedural bar. *Nunnemaker*, 501 U.S. at 803.

1    The second procedural default scenario arises when a state prisoner failed to present

2  his federal claims to the state court, but returning to state court would be "futile" because the

3  state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

4  previously unraised claims. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*,

5  303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035,

6  1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-

7  conviction review is precluded for claims waived at trial, on appeal, or in any previous

8  collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must

9  be filed within thirty days of trial court's decision).  A state post-conviction action is futile

10  where it is time-barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th

11  Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal

12  of an Arizona petition for post-conviction relief, distinct from preclusion under Rule

13  32.2(a)).  This type of procedural default is known as "technical" exhaustion because

14  although the claim was not actually exhausted in state court, the petitioner no longer has an

15  available state remedy.  *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted

16  his federal claims in state court meets the technical requirements for exhaustion; there are no

17  remedies any longer 'available' to him.").

18    In either case of procedural default, federal review of the claim is barred absent a

19  showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Dretke v.*

20  *Haley*, 541 U.S. 386, 393-94, (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To

21  establish "cause," a petitioner must establish that some objective factor external to the

22  defense impeded his efforts to comply with the state's procedural rules.  *Id.*  The following

23  objective factors may constitute cause: (1) interference by state officials, (2) a showing that

24  the factual or legal basis for a claim was not reasonably available, or (3) constitutionally

25  ineffective assistance of counsel.  *Id.*  Ordinarily, the ineffective assistance of counsel in

26  collateral proceedings does not constitute cause because "the right to counsel does not

27  extend to state collateral proceedings or federal habeas proceedings." *Martinez-Villareal v.*

28  *Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

Prejudice is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

A federal court may also review the merits of a procedurally defaulted claim if petitioner demonstrates that failure to consider the merits of his claim will result in a "fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* To satisfy the "fundamental miscarriage of justice" standard, petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B). Even if petitioner asserts a claim of actual innocence to excuse his procedural default of a federal claim, federal habeas relief may not be granted absent a finding of an independent constitutional violation occurring in the state criminal proceedings. *Dretke*, 541 U.S. at 393-94.

**B. Application of Law to Petitioner's Claims**

**1. Ground One**

In Ground One, Petitioner asserts a due process violation under the Fourteenth Amendment. Petitioner argues that the factual basis provided by his counsel at the change-of-plea hearing was incorrect and that the trial court refused to conduct an evidentiary hearing on Petitioner's motion to withdraw his guilty pleas on that basis. (docket # 6 at 6) In his first petition for post-conviction relief, Petitioner alleged a federal due process violation based on counsel's failure to provide an accurate factual basis and the trial court's failure to hold an evidentiary hearing on the motion to withdraw the guilty plea. (Respondents' Exh. K at 6) The trial court rejected these claims. Petitioner raised the same

1    claims to the Arizona Court of Appeals.  (Respondents' Exh. M at 3, 6)  Thus, Petitioner

2    properly exhausted Ground One.

3         **2. Ground Two**

4         In Ground Two, Petitioner argues that counsel was ineffective for providing an

5    incorrect factual basis for his guilty pleas.  (docket # 6 at 7, 12)  Petitioner's first petition

6    for post-conviction relief also asserted a claim that trial counsel was ineffective for

7    "providing an incorrect factual basis."  (Respondents' Exh. K at 6, 7)  However, Petitioner

8    did not assert this claim in his petition for review to the Arizona Court of Appeals.

9    (Respondents' Exh. M at 3, 6-7)  Accordingly, Petitioner did not properly present Ground

10   Two to the state courts and that claim is procedurally defaulted.

11        **3. Ground Three**

12        In Ground Three, Petitioner asserts a claim of ineffective assistance of counsel based

13   on: (a) counsel's failure to subpoena witnesses for the motion-to-withdraw/sentencing

14   hearing; and (b) not objecting to the trial court's failure give advance notice that it intended

15   to impose an exceptionally-aggravated sentence.  (docket # 6 at 8)  Petitioner raised both of

16   these claims in his first petition for post-conviction relief.  (Respondents' Exh. K at 8)  In

17   his petition for review to the Arizona Court of Appeals, Petitioner challenged counsel's

18   failure to subpoena witnesses but did not challenge counsel's failure to object to Petitioner's

19   aggravated sentence.  (Respondents' Exh. M at 3, 7)  Accordingly, Petitioner did not

20   properly present to the state courts his claim that counsel was ineffective for failing to object

21   to the aggravated sentence.  Thus, he has procedurally defaulted Ground 3(b).

22        **C. Procedural Bar**

23         Petitioner's claims in Grounds 2 and Ground 3(b) are technically exhausted and

24   procedurally barred, because a return to state court to present those claims would be futile

25   because they would be procedurally barred pursuant to Arizona law.  First, Petitioner is

26   time-barred under Arizona law from raising these claims in a successive petition for post-

27   conviction relief  because the time for filing a notice of post-conviction relief has long

28   expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed

1   "within ninety days after the entry of judgment and sentence or within thirty days after the

2   issuance of the order and mandate in the direct appeal, whichever is later.")  Although Rule

3   32.4 does not bar dilatory claims if they fall within the category of claims specified in

4   Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions

5   apply to him.  Moreover, a state post-conviction action is futile where it is time-barred.

6   *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410

7   (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for

8   dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under

9   Rule 32.2(a)).

10          Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

11   defendant is precluded from raising claims that could have been raised on direct appeal or in

12   any previous collateral proceeding. *See Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

13   1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

14   number of issues and waived other issues that he could have then raised, but did not); *State*

15   *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App. 1995) ("Defendants are precluded

16   from seeking post-conviction relief on grounds that were adjudicated, or could have been

17   raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State*

18   *v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (App. 1994) (defendant's claim that his

19   sentence had been improperly enhanced by prior conviction was precluded by defendant's

20   failure to raise issue on appeal).   The claims asserted in Grounds 2 and 3(b) could have, and

21   should have, been properly raised on post-conviction review.  Accordingly, the State court

22   would find those claims procedurally barred.

23          **1. Cause and Prejudice**

24          As set forth above, Petitioner's claims in Grounds 2 and 3(b) are procedurally

25   defaulted and barred from federal habeas review absent a showing of "cause and prejudice"

26   or a "fundamental miscarriage of justice."

27          To establish "cause," a petitioner must establish that some objective factor external to

28   the defense impeded his efforts to comply with the state's procedural rules.  *Murray*, 477

1   U.S. at 488-492.  The following objective factors may constitute cause: (1) interference by

2   state officials, (2) a showing that the factual or legal basis for a claim was not reasonably

3   available, or (3) constitutionally ineffective assistance of counsel.  *Id.*  Prejudice is actual

4   harm resulting from the constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d

5   240, 244 (9th Cir. 1984).  Where petitioner fails to establish cause for his procedural default,

6   the court need not consider whether petitioner has shown actual prejudice resulting from the

7   alleged constitutional violations.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).

8          Petitioner does not assert any specific basis to overcome the procedural bar.  (docket

9   # 17)  Rather, he generally argues that he is *pro se* and lacks legal assistance.  Petitioner's

10  *pro se* status and ignorance of the law do not satisfy the cause standard. *Hughes v. Idaho*

11  *State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986); *Tacho v. Martinez*, 862 F.2d

12  1376, 1381 (9th Cir. 1988).  Because Petitioner offers no legitimate "cause" which

13  precluded him from properly exhausting his state remedies, the Court declines to reach the

14  issue of prejudice.  *Engle*, 456 U.S. at 134 n. 43.

15          **2.  Fundamental Miscarriage of Justice**

16          Additionally, Petitioner has not shown that failure to consider his claims raised in

17  Grounds 2 and 3(b) will result in a fundamental miscarriage of justice. A federal court may

18  review the merits of a procedurally defaulted habeas claim if the petitioner demonstrates that

19  failure to consider the merits of his claim will result in a "fundamental miscarriage of

20  justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A "fundamental miscarriage of justice"

21  occurs when a constitutional violation has probably resulted in the conviction of one who is

22  actually innocent.  *Id.*

23          This gateway "actual innocence" claim differs from a substantive actual innocence

24  claim.  *Smith v. Baldwin*, 466 F.3d 805, 811-12 (9th Cir. 2006).  The Supreme Court

25  described the gateway showing in *Schlup*, 513 U.S. at 315-16, as a less stringent standard

26  than a substantive claim of actual innocence. *See also Carriger v. Stewart*, 132 F.3d 463,

27  476 (9th Cir. 1997) (suggesting that a "habeas petitioner asserting a freestanding innocence

28  claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that

- 13 -

1   he is innocent."). If Petitioner passes through the *Schlup* gateway, the court is only

2   permitted to review his underlying constitutional claims. *Smith*, 466 F.3d at 807. The

3   fundamental miscarriage of justice exception applies only to a "narrow class of cases" in

4   which a petitioner makes the extraordinary showing that an innocent person was probably

5   convicted due to a constitutional violation. *Schlup v. Delo*, 513 U.S. 298, 231 (1995). To

6   demonstrate a fundamental miscarriage of justice, Petitioner must show that "a constitutional

7   violation has resulted in the conviction of one who is actually innocent." *Schlup*, 513 U.S. at

8   327. To establish the requisite probability, Petitioner must prove with new reliable evidence

9   that "it is more likely than not that no reasonable juror would have found petitioner guilty

10  beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327. New evidence presented in

11  support of a fundamental miscarriage of justice may include "exculpatory scientific

12  evidence, trustworthy eyewitness accounts, or critical physical evidence that was not

13  presented at trial." *Id.* at 324, *see also, House v. Bell*, 547 U.S. 518 (2006) (stating that a

14  fundamental miscarriage of justice contention must involve evidence that the trial jury did

15  not have before it).

16        Petitioner has not established that, in light of newly discovered evidence, "it is more

17  likely than not that no reasonable juror would have found petitioner guilty beyond a

18  reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

19  **III.  Analysis**

20        The Court will consider the merits of Petitioner's claims after setting forth the

21  standard of review. As discussed below, whether or not procedurally defaulted, all of

22  Petitioner's claims lack merit. *See* 28 U.S.C. § 2254(b)(2) (stating that the court may deny a

23  petition for writ of habeas corpus on the merits "notwithstanding the failure of the applicant

24  to exhaust the remedies available in the courts of the State.") *Id.*

25        **A.  Standard of Review**

26        In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

27  ("AEDPA") which "modified a federal habeas court's role in reviewing state prisoner

28  applications in order to prevent federal habeas 'retrials' and to ensure that state-court

1  convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S.

2  685, 693 (2002).

3       Under the AEDPA, a federal court may not grant a habeas petition  "with respect to

4  any claim that was adjudicated on the merits in state court" unless the state court's decision

5  was either (1) "contrary to, or involved an unreasonable application of, clearly established

6  Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an

7  unreasonable determination of the facts in light of the evidence presented in the State court

8  proceeding."  28 U.S.C. § 2254(d)(1),(2); *Carey v. Musladin*, 549 U.S. 70 (2006); *Lockyer v.*

9  *Andrade*, 538 U.S. 63, 75-76 (2003); *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).

10  To determine whether a state court ruling was "contrary to" or involved an "unreasonable

11  application" of federal law, courts look exclusively to the holdings of the Supreme Court

12  which existed at the time of the state court's decision.  *Mitchell v. Esparza*, 540 U.S. 12, 15-

13  15 (2003); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Accordingly, the Ninth Circuit has

14  acknowledged that it cannot reverse a state court decision merely because that decision

15  conflicts with Ninth Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378

16  F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

17       Even if the state court neither explained its ruling nor cited United States Supreme

18  Court authority, the reviewing federal court must nevertheless examine Supreme Court

19  precedent to determine whether the state court reasonably applied federal law.  *Early v.*

20  *Packer*, 537 U.S. 3, 8 (2003).  The United States Supreme Court has expressly held that

21  citation to federal law is not required and that compliance with the habeas statute "does not

22  even require awareness of our cases, so long as neither the reasoning nor the result of the

23  state-court decision contradicts them." *Id.*

24       A state court's decision is "contrary to" federal law if it applies a rule of law "that

25  contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

26  facts that are materially indistinguishable from a decision of [the Supreme Court] and

27  nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

28  *Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

- 15 -

1   (2000).

2        A state court decision is an "unreasonable application of" federal law if the court

3   identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

4   case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An incorrect

5   application of federal law does not satisfy this standard.  *Yarborough v. Alvarado*, 541 U.S.

6   652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state

7   court's decision is objectively unreasonable.") "It is not enough that a federal habeas court,

8   in its independent review of the legal question," is left with the "firm conviction" that the

9   state court ruling was "erroneous." *Id.*; *Andrade*, 538 U.S. at 75.  Rather, the petitioner must

10  establish that the state court decision is "objectively unreasonable."  *Middleton v. McNeil*,

11  541 U.S. 433 (2004); *Andrade*, 538 U.S. at 76.

12       In conducting an analysis under the AEDPA, the habeas court considers the last

13  reasoned state court decision addressing the claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803

14  (1991). Additionally, the habeas court presumes that the state court's factual determinations

15  are correct and petitioner bears the burden of rebutting this presumption by clear and

16  convincing evidence.  28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues

17  made by a State court shall be presumed to be correct.  The applicant shall have the burden

18  of rebutting the presumption of correctness by clear and convincing evidence."); *Williams v.*

19  *Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

20       Where a state court decision is deemed  "contrary to" or an "unreasonable application

21  of" clearly established federal law, the reviewing court must next determine whether it

22  resulted in constitutional error. *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

23  On habeas review, the court assesses the prejudicial impact of most constitutional errors by

24  determining whether they "had substantial and injurious effect or influence in determining

25  the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

26  *United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht*

27  standard applies whether or not the state court recognized the error and reviewed it for

28  harmlessness).  The *Brecht* harmless error analysis also applies to habeas review of a

1    sentencing error.  The test is whether such error had a "substantial and injurious effect" on

2    the sentence.  *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas

3    relief to be granted based on constitutional error in capital penalty phase, error must have

4    had substantial and injurious effect on the jury's verdict in the penalty phase.); *Hernandez v.*

5    *LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence

6    of three of petitioner's prior convictions was insufficient, petitioner was not prejudiced by

7    the court's consideration of those convictions because the trial court found four other prior

8    convictions which would have supported petitioner's sentence.)  The Court will review

9    Petitioner's claims under the applicable standard of review.

10           **B.  Ground One - Due Process Violation**

11           In Ground One, Petitioner argues that the trial court violated his right to due process

12   by failing to hold an evidentiary hearing on his motion to withdraw from the plea agreement

13   (docket # 6 at 6)   In his motion to withdraw, Petitioner asserted that the factual bases for his

14   pleas were incorrect.  (Respondents' Exh. V)  Specifically, Petitioner explained that the

15   factual bases were incorrect because, contrary to the facts recited by defense counsel during

16   the change-of-plea hearing, Petitioner denied providing Tina Ricketts with a wig or disguise

17   to impersonate Lucinda Maxfield.  (Respondents' Exh. I at 5-8; Exh. V)   The trial court

18   denied the motion following oral argument, but not an evidentiary hearing, on the motion.

19           On post-conviction review, Petitioner challenged the trial court's failure to conduct

20   an evidentiary hearing on the motion to withdraw.  (Respondents' Exh. K)  The post-

21   conviction court rejected Petitioner's claim.  (Respondents' Exh. L)  The court noted that

22   Petitioner's motion to withdraw was supported by "the general facts to which he expected

23   the witnesses to testify."  The court also noted that the motion included "a deposition

24   transcript, and documentation from a forensic laboratory."  (Respondents' Exh. L at 2)  In

25   rejecting Petitioner's claim, the court found that: "Defense counsel read the factual

26   foundation for both counts into the record, and defendant agreed to the accuracy thereof."

27   (Respondents' Exh. L at 2)  The court further noted that the "detective who led the

28   investigation . . . did not believe that the victim was involved or that the victim benefitted

1  from the scheme." (*Id.*)  The post-conviction court concluded that Petitioner had "not shown

2  error based on the Court's denial of his motion to withdraw from the plea agreement . . . ."

3  (*Id.*)  It further concluded that the court did not abuse its discretion in finding that

4  Petitioner's pleas were made knowingly, intelligently, and voluntarily.  (*Id*. at 2-3)

5      Petitioner has failed to establish that the state court's decision was contrary to, or

6  involved an unreasonable application of, federal law.  28 U.S.C. § 2254.  Petitioner pleaded

7  guilty pursuant to a written plea agreement which the trial court accepted.  Where a

8  defendant pleads guilty, review is limited to whether the underlying plea was counseled and

9  voluntary.  *United States v. Broce*, 488 U.S. 563, 569 (1989); *Boykin v. Alabama*, 395 U.S.

10  238, 242-43 (1969) (stating that to comport with due process, a guilty plea must be knowing

11  and voluntary); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant

12  has solemnly admitted in open court that he is in fact guilty of the offense of which he is

13  charged, he may not thereafter raise independent claims relating to the deprivation of

14  constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack

15  the voluntary and intelligent character of the guilty plea by showing that the advice he

16  received from counsel was [deficient.]").

17      The record demonstrates that Petitioner knowingly and voluntarily pleaded guilty

18  without force, threats, or promises.  (Respondents' Exh. F)  At the change-of-plea hearing,

19  Petitioner advised the court that he had reviewed the charges and the plea agreement with

20  counsel.  (Respondents' Exh. F at 6)  Significantly, Petitioner attested to the accuracy of the

21  factual bases for his guilty pleas.  (Respondents' Exh. F at 12-13)  Petitioner's "solemn

22  declarations in open court carry a strong presumption of verity." *United States v. Rubalcaba*,

23  811 F.2d 491, 494 (9th Cir. 1987) (rejecting claim of involuntariness of guilty plea).  In

24  accepting Petitioner's guilty plea, the court noted that Petitioner had acknowledged that he

25  was guilty as charged, there was a factual basis for Petitioner's pleas, and that he was aware

26  of his rights and waived those rights knowingly and voluntarily.  (Respondents' Exh. F at

27  14)

28

1    During the sentencing hearing, Scottsdale police detective, Paul Arnold, testified that

2 he did not believe Lucinda Maxfield, the victim, was involved in the mortgage scheme.

3 (Respondents' Exh. I at 15-17)  Arnold testified that Petitioner provided crack cocaine to

4 Maxfield to keep her in a drug-induced state so she would not be aware that Petitioner and

5 Ricketts were obtaining a mortgage on Maxfield's property.  (Respondents' Exh. I at 16)

6 This testimony was consistent with the factual bases for Petitioner's guilty pleas provided at

7 the change-of-plea hearing.

8    Petitioner has not established that the post-conviction court's rejection of his claim

9 that he was entitled to withdraw from his guilty pleas due to the inaccurate factual bases is

10 contrary to, or rests on an unreasonable application of, federal law.  Although the state court

11 neither explained its ruling nor cited United States Supreme Court precedent, this Court

12 must look to Supreme Court precedent to determine whether the decision was a reasonable

13 application of federal law.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The Supreme Court has

14 held that citation to federal law is not required and that "a state court need not even be aware

15 of [Supreme Court] precedent, 'so long as neither the reasoning nor the result of the state-

16 court decision contradicts them.'" *Mitchell v. Esparaza*, 540 U.S. 12, 16 (2003) (citing

17 *Early*, 537 U.S. at 8).

18    First, any deficiency in the factual bases for Petitioner's guilty pleas does not give

19 rise to a constitutional violation.  In federal court, Federal Rule of Criminal Procedure 11

20 requires that there be a factual basis for a guilty plea.   Similarly, Arizona Rule of Criminal

21 Procedure Rule 17.3 requires that, before the trial court may accept a guilty plea, it must

22 satisfy itself that there is a factual basis for the plea.  *State v. Herndon*, 109 Ariz. 147, 148,

23 506 P.2d 1041, 1042 (1973).  However, neither the Rule 11 nor the Ariz.R.Crim. P. 17.3

24 procedure are "constitutionally mandated." *McCarthy v. United States*, 394 U.S. 459, 465

25 (1969).  In other words, state courts are not constitutionally required to establish a factual

26 basis for an otherwise voluntary and intelligent guilty plea.  *See North Carolina v. Alford*,

27 400 U.S. 25, 37-38 (1970); *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985)

28 (concluding that "the due process clause does not impose on a state court the duty to

1    establish a factual basis for a guilty plea absent special circumstances.")  Accordingly, to the

2    extent that Petitioner challenges the state court's failure to comply with Ariz.R.Crim.P. 17.3,

3    that claim is based solely on state law and is not cognizable on habeas corpus review.  *See*

4    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the province of a

5    federal habeas court to reexamine state-court determinations on state-law questions.").

6         Moreover, the trial court's rejection of Petitioner's motion to withdraw from the

7    guilty plea was not contrary to, or an unreasonable application of federal law, or based on an

8    unreasonable determination of the facts.  During the change-of-plea hearing, Petitioner

9    himself advised the court that the factual bases for his pleas were accurate.  Specifically,

10   after counsel articulated the factual bases for the pleas, the court asked Petitioner if those

11   facts were true.   Petitioner responded affirmatively as to the factual basis for his guilty plea

12   on each count.  (Respondents' Exh. F at 12, 13)   In *Blackledge v. Allison*, 431 U.S. 63, 73-

13   74 (1977), the Supreme Court stated that although the defendant's representations at the time

14   of the plea are not "invariably insurmountable," when a defendant later challenges the

15   voluntariness of his plea, the defendant's representations, and any findings made by the trial

16   court accepting the plea, "constitute a formidable barrier . . . . Solemn declarations in open

17   court carry a strong presumption of verity."  *See also Chizen v. Hunter*, 809 F.2d 560, 562

18   (9th Cir. 1986).

19        As previously stated, Petitioner argues that the trial court erred by failing to conduct

20   an evidentiary hearing on Petitioner's motion to withdraw from the plea agreement based on

21   his assertion that the factual bases for those pleas were inaccurate.  Had that trial court held

22   an evidentiary hearing, Petitioner essentially would have had testified that he had lied to the

23   trial court during the change-of-plea hearing when he told the court that the factual bases for

24   his guilty pleas were accurate.   The court would have likely found this testimony unreliable.

25   *See Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. 1984).  Moreover, Petitioner's

26   credibility would have been impeached by the fact that during the change-of-plea hearing, he

27   had the opportunity to explain any inaccuracies in the factual bases for his pleas, but rather

28   stated that:

- 20 -

1
2

> I really don't have anything to say. It's a shame people [are] not interested in the truth, you know. We make up all these little stories but nobody knows the truth. It's really sad. But I see no other thing.

3   (Respondents' Exh. I at 19)

4        Finally, the record before the state court supported Petitioner's guilty pleas. Under

5   Arizona law, the factual basis for a guilty plea may be determined from the extended record,

6   including the pre-sentence report, preliminary hearing transcripts, the defendants'

7   statements, proceedings before the grand jury, and other sources. *State v. Varela*, 120 Ariz.

8   596, 598, 587 P.2d 1173, 1175 (Ariz. 1978). During the change-of-plea hearing, Petitioner

9   advised the court that the factual bases for his guilty pleas were accurate. Petitioner's

10  subsequent statement that Maxfield was involved in the scam and that he did not provide

11  Ricketts with a disguise to impersonate Maxfield, were contrary to the record. At the

12  sentencing hearing, Scottsdale police detective Arnold advised the court that, in view of the

13  evidence he had reviewed, Maxfield was not involved in the mortgage fraud and Petitioner

14  was the "mastermind" of the scheme. (Respondents' Exh. I at 15-17)  Petitioner's

15  involvement with co-defendant Ricketts in committing the crimes against Maxfield was

16  detailed in the police reports, which were cited in the pre-sentence report. (Respondents'

17  Exh. S at 1)

18        Petitioner has not established that, if the court had held an evidentiary hearing on his

19  motion to withdraw from the plea agreement, evidence would have been presented that

20  would have called into question the accuracy of the factual bases articulated by defense

21  counsel during the change-of-plea hearing. The pre-sentence report indicates that Ricketts

22  pled guilty to Count One and to Count Five, taking the identity of another. (Respondents'

23  Exh. S at 2)  The addendum to Ricketts' plea agreement, which set forth the factual bases for

24  her guilty pleas, was attached to the State's response to the Motion to Withdraw.

25  (Respondents' Exh. T)  That written factual basis establishes that: (1) the mortgage was

26  obtained without Maxfield's knowledge or permission; (2) Ricketts pretended to be

27  Maxfield; and (3) Ricketts wore a blonde wig provided by Petitioner as part of her disguise.

28  (Respondents' Exh. T)

1    Furthermore, even if evidence was presented indicating that Maxfield was somehow

2  involved in the mortgage scheme or that Ricketts created her disguise by herself, there

3  would still be a sufficient factual basis for Petitioner's guilty plea.  Petitioner knew about the

4  scheme and benefitted when proceeds from the mortgage were wired to his "Richard Self"

5  account.   At sentencing, Petitioner's counsel conceded that any participation by Maxfield in

6  the scheme, "does not exclude or excuse Mr. Jernigan's participation in this . . . ."

7  (Respondents' Exh. I at 19-20)   Additionally, the pre-sentence report noted that Petitioner

8  admitted participating in the fraud, but attempted to minimize his culpability by claiming

9  that he "did not initiate or organize this fraud."  (Respondents' Exh. S at 3)

10    In view of foregoing, Petitioner has not shown that the state court's rejection of his

11  challenge to the trial court's denial of his motion to withdraw his guilty pleas was contrary

12  to, or an unreasonable application of, federal law.

13    **B.  Ground Two**

14    In Ground Two, Petitioner asserts that trial counsel, Susan Maga, was ineffective at

15  the change-of-plea hearing because she "provided an incorrect factual basis for the guilty

16  plea." (docket # 6 at 7)  Petitioner argues that the incorrect factual basis led the "court to

17  conclude that petitioner was the mastermind behind the crime and his sentence was

18  aggravated accordingly to a superaggravated sentence of 16.25 years." (docket # 6 at 7)

19    The controlling Supreme Court precedent on claims of ineffective assistance of

20  counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

21  must show that counsel's performance was objectively deficient and that counsel's deficient

22  performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

23  1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the

24  wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  When

25  reviewing counsel's performance, the court engages a strong presumption that counsel

26  rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*,

27  466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be

28  made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

1   counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

2   time." *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely

3   limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*

4   *grounds*, 525 U.S. 141 (1998). "A convicted defendant making a claim of ineffective

5   assistance must identify the acts or omissions of counsel that are alleged not to have been the

6   result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Acts or omissions

7   that "might be considered sound trial strategy" do not constitute ineffective assistance of

8   counsel.  *Strickland*, 466 U.S. at 689.

9        To establish a Sixth Amendment violation, petitioner must also establish that he

10  suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

11  691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140,147 (2006) (stating that "a violation

12  of the Sixth Amendment right to effective representation is not 'complete' until the

13  defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable

14  probability that, but for counsel's unprofessional errors, the result of the proceeding would

15  have been different.  A reasonable probability is a probability sufficient to undermine

16  confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v.*

17  *Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).   To prove prejudice in the context of a guilty

18  plea, petitioner must establish a reasonable probability that, but for counsel's deficient

19  performance, he would not have accepted the offer but would have proceeded to trial.

20  *Strickland*, 466 U.S. at 693.  The court may proceed directly to the prejudice prong.  *Jackson*

21  *v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 697).

22  The court, however, may not assume prejudice solely from counsel's allegedly deficient

23  performance.  *Jackson*, 211 F.3d at 1155.

24       Petitioner fails to establish that counsel was ineffective.  First, he has not shown that

25  counsel's performance was deficient.  The factual bases which attorney Maga set forth

26  during the change-of-plea hearing were consistent with the record.   The factual bases were

27  consistent with the police reports and with the factual bases for the guilty pleas entered by

28  co-defendant Ricketts. (Respondents' Exh. S at 1-2, Exh. T)  During a settlement

1   conference, the prosecutor described the facts the State would prove at Petitioner's trial.

2   (Respondents' Exh. U at 4-6)   Petitioner did not contest the State's case, but rather entered a

3   plea agreement.   Additionally, at the change-of–plea hearing Petitioner advised the court

4   that the factual bases articulated by counsel were accurate. (Respondents' Exh. F at 12, 13)

5          Petitioner has not presented any evidence supporting his allegation the factual bases

6   for his guilty pleas were false, that Maxfield was involved in the scheme, or that he did not

7   provide Ricketts with a blonde wig or otherwise assisted her impersonate Maxfield.  Thus,

8   Petitioner has not shown that counsel's performance was deficient with respect to the factual

9   bases for Petitioner's guilty pleas.

10          Additionally, even assuming counsel's performance was deficient, Petitioner has not

11   shown that he was prejudiced thereby.  In other words, he has not established that but for

12   counsel's deficient performance, he would have rejected the plea and proceeded to trial.  *See*

13   *Wanatee v. Ault*, 101 F.Supp.2d 1189, 1204 (N.D. Iowa 2000) (to show prejudice resulting

14   from counsel's deficient advice, petitioner must offer more than self-serving statements;

15   rather he must present credible, nonconclusory evidence that he would not have pleaded

16   guilty had he been properly advised).  Furthermore, even if counsel articulated inaccurate

17   factual bases, those inaccuracies did not affect Petitioner's decision to plead guilty.  Rather,

18   Petitioner pled guilty despite his alleged knowledge that the factual bases were not true.  *See*

19   *Lipscomb v. Secretary*, 2008 WL 434881, * 10 (M.D.Fla., Feb. 14, 2008) (stating that

20   "Lipscomb's acceptance of the favorable plea bargain was an informed election to forego

21   further pursuit of his known claim that the victim's accusations were not true.")  Also,

22   Petitioner did not deny involvement in the scheme.  Rather, he admitted participating in the

23   scheme, but claimed that he "did not initiate or organize [it]."  (Respondents' Exh. S at 3)

24   He also conceded that any participation in the scheme by Maxfield, did not "exclude or

25   excuse" his participation.  (Respondents' Exh. I at 19-20)

26          Petitioner also argues that the alleged inaccuracies in the factual bases articulated by

27   counsel led the court to believe Petitioner was the "mastermind," and to impose a super-

28   aggravated sentence.  (docket # 6 at 7)  Contrary to Petitioner's assertion, the aggravated

1   sentence was not based on the court's conclusion that Petitioner was the mastermind behind

2   the crime.  Rather, the court found the following aggravating circumstances: (1) Petitioner's

3   1994 conviction, which Petitioner admitted; (2) the presence of an accomplice; and (3) the

4   offense was committed for pecuniary gain.  (Respondents' Exh. I at 22)   Thus, even if

5   defense counsel's factual bases wrongly led the court to consider Petitioner the mastermind,

6   Petitioner was not prejudiced because this conclusion was unrelated to the aggravating

7   circumstances supporting Petitioner's sentence.  Moreover, even if the court concluded that

8   Petitioner was the mastermind, there was sufficient evidence, aside from the factual bases set

9   forth by defense counsel, from which the court could have reached that conclusion.  The

10  presentence report indicated that Petitioner orchestrated the scheme and that the State had

11  made a more favorable plea offer to co-defendant Ricketts.  (Respondents' Exh. S at 1-3)

12  Additionally, Scottsdale police detective Arnold testified at sentencing that "the fact that

13  [Petitioner] opened up a bank account using fictitious information, had a considerable

14  amount of money wire transferred after directing Miss Ricketts to initiate that wire transfer

15  to his account at Bank of America, then withdrew funds from the account, clearly led me to

16  believe that he was the mastermind, that he did orchestrate and benefit from this."

17  (Respondents' Exh. I at 16-17)

18         Additionally, Petitioner's subsequent counsel, Ms. Capozzi, made the court aware of

19  Petitioner's position regarding his role in the scam.  At sentencing, she told the court, "it's

20  my client's strong position that Lucinda Maxfield was very much involved in this . . . .That,

21  I understand, does not exclude or excuse Mr. Jernigan's participation in this, but I do believe

22  those are some of the facts he's alluding to in this case."  (Respondents' Exh. I at 19-20) The

23  presentence report notes that, although Petitioner admitted participating in the fraud, he

24  claimed that he "did not initiate or organize [it]."  (Respondents' Exh. S at 3) Thus, even if

25  counsel's factual bases inaccurately described Petitioner's role in the scheme, any

26  inaccuracy was minimized by Petitioner's statements in the presentence report and attorney

27  Capozzi's rebuttal at sentencing to the State's "mastermind" theory.  *See Farrow v. United*

28  *States*, 580 F.3d 1339, 1361 (9th Cir. 1978).

1    In conclusion, Petitioner fails to establish that counsel was ineffective with respect to

2    the factual bases for his guilty pleas or for leading the court to believe that Petitioner was the

3    mastermind behind the mortgage scheme.

4        **C.  Ground Three**

5        In Ground Three, Petitioner asserts that counsel was ineffective for (a) not

6    subpoenaing witness to support Petitioner's motion to withdraw from the plea agreement;

7    and (b) not objecting to the trial court's failure to give advance notice that it intended to

8    impose an exceptionally aggravated sentence on Count 1.   (docket # 6 at 8)

9        The controlling Supreme Court precedent on claims of ineffective assistance of

10   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

11   must show that counsel's performance was objectively deficient and that counsel's deficient

12   performance prejudiced the petitioner.  *Strickland*, 466 U.S. at 687; *Hart v. Gomez*, 174 F.3d

13   1067, 1069 (9th Cir. 1999).  To be deficient, counsel's performance must fall "outside the

14   wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. When

15   reviewing counsel's performance, the court engages a strong presumption that counsel

16   rendered adequate assistance and exercised reasonable professional judgment.  *Strickland*,

17   466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be

18   made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

19   counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

20   time."  *Strickland*, 466 U.S. at 689.  Review of counsel's performance is "extremely

21   limited."  *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other*

22   *grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial

23   strategy" do not constitute ineffective assistance of counsel.  *Strickland*, 466 U.S. at 689.

24       To establish a Sixth Amendment violation, petitioner must also establish that he

25   suffered prejudice as a result of counsel's deficient performance.  *Strickland*, 466 U.S. at

26   691-92; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006) (stating that "a violation

27   of the Sixth Amendment right to effective representation is not 'complete' until the

28   defendant is prejudiced.")  To show prejudice, petitioner must demonstrate a "reasonable

1   probability that, but for counsel's unprofessional errors, the result of the proceeding would

2   have been different.  A reasonable probability is a probability sufficient to undermine

3   confidence in the outcome." *Strickland*, 466 U.S. at 694; *Hart*, 174 F.3d at 1069; *Ortiz v.*

4   *Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The court may proceed directly to the prejudice

5   prong.  *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*, 466

6   U.S. at 697).  The court, however, may not assume prejudice solely from counsel's allegedly

7   deficient performance.  *Jackson*, 211 F.3d at 1155.

8          Petitioner challenges attorney Capozzi's failure to subpoena the following four

9   people as witnesses to testify in support of his motion to withdraw from the plea agreement:

10  Lucinda Maxfield, David Robinson, William Flynn, and Stacey Scaife.  (docket # 6 at 9)

11  Whether to subpoena a witness is a strategic decision based on counsel's professional

12  judgment.  *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).  Counsel in this case

13  attempted to subpoena the foregoing persons, but advised the court that she was "unable to

14  get return of service on those individuals."  (Respondents' Exh. I at 4)  Counsel asked for a

15  continuance, but the court denied the motion because the matter had previously been

16  continued.  (Respondents' Exh. I at 4)  Although counsel was unable to secure the

17  attendance of the foregoing individuals in person, she supported the motion to withdraw

18  Petitioner's guilty pleas with excerpts from Scaife's deposition in a civil case and forensic

19  documentation.  (Respondents' Exh. V, attachments)   In view of the foregoing, counsel's

20  performance was not deficient.

21         Additionally, Petitioner was not prejudiced by counsel's alleged deficient

22  performance.  The state court found that it did not need the testimony of Maxfield,

23  Robinson, Flynn, or Scaife to decide the motion to withdraw.  (Respondents' Exh. L)  The

24  court noted the motion to withdraw from the guilty plea "stated the general facts to which

25  [Petitioner] expected the witnesses to testify and his position."  (Respondents' Exh. l at 3)

26  The motion also included Scaife's deposition transcript and documentation from a forensic

27  laboratory regarding signatures by Lucinda Maxfield.  (Respondents' Exh. L at 3; Exh. V,

28  attachment)  The court concluded that "Defendant has failed to show a reasonable

1   probability that the result of the proceeding would have been different had counsel secured

2   the attendance of the witnesses at the hearing on the motion to withdraw the plea

3   agreement." (Respondents' Exh. L at 3)  Petitioner has not shown that the state court's

4   decision was contrary to, or an unreasonable application, of federal law.  28 U.S.C. §

5   2254(d).

6          Petitioner has not presented any evidence regarding the testimony the four witnesses

7   would have given that would have shown that the factual bases for Petitioner's guilty pleas

8   were inaccurate. *Morgan v. Bunnell*, 24 F.3d 49, 53 (9th Cir. 1994) (stating that the court

9   was not convinced that testimony of uncalled witnesses would have been helpful.)

10  Petitioner has not presented any evidence indicating that there is a reasonable likelihood that

11  Maxfield would have testified that she was involved in the scheme.  Nor is there any

12  indication that co-defendant Robinson would have contradicted the factual bases agreed to

13  by both Ricketts and Petitioner.  Indeed, Robinson previously admitted to the police that he

14  received checks from Petitioner in exchange for "keeping the scheme hidden from

15  Maxfield." (Respondents' Exh. S at 1)  In support of the motion to withdraw, attorney

16  Capozzi submitted excerpts from Scaife's deposition from a civil case.  (Respondents' Exh.

17  V, attachment)  Petitioner has not explained William Flynn's relationship to this case, or

18  described how his testimony would have persuaded the trial court that the factual bases were

19  inaccurate and that Petitioner should be permitted to withdraw from his guilty pleas.   In

20  view of the foregoing, Petitioner fails to show that counsel was ineffective for failing to

21  subpoena witnesses.

22          Petitioner further argues that counsel was ineffective for failing to object to the trial

23  court's failure to give advance notice that it intended to impose super-aggravated sentence.

24  Even assuming counsel was deficient for failing to raise this issue, Petitioner has not shown

25  prejudice.  There is nothing to suggest that, had counsel objected and the court continued

26  sentencing, the court would not have found the three aggravating circumstances or would

27  not have imposed the aggravated sentence.

28

## IV.  Conclusion

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus be denied and dismissed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus (docket # 6) be **DENIED.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.  The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure.  Thereafter, the parties have ten days within which to file a response to the objections.  Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 23rd day of April, 2009.



Lawrence O. Anderson
United States Magistrate Judge