1   **WO**

2

3

4

5

6                       IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Luther Jernigan,                    )    No. CV 08-838-PHX-MHM (LOA)
                                         )
10              Petitioner,              )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
    Charles L. Ryan, et al.,             )
13                                       )
                Respondents.             )
14                                       )
                                         )
15  _____    )

16

17

18          On July 18, 2008, Luther Jernigan ("Petitioner") filed an Amended Petition for Writ

19  of Habeas Corpus.[1]  (Dkt. #6)  Respondents subsequently filed an Answer on October 22,

20  2008.  (Dkt. #13) This matter was referred to United States Judge Magistrate Lawrence O.

21  Anderson, who issued a Report and Recommendation (Dkt. #18) recommending that

    Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed.
22
    Petitioner filed a written Objection to the Report (Dkt. #21) and a Motion for Leave to Take
23

24

25  _____

26          [1]  On May 1, 2008, Petitioner filed a pro se Petition for Writ of Habeas Corpus
    pursuant to 28 U.S.C. § 2254 (2000).  (Dkt. #6)  Because Petitioner failed to allege any
27  "violation of the Constitution or laws or treaties of the United States," as required under 28
    U.S.C. § 2254, this Court dismissed said petition without prejudice, allowing Petitioner leave
28  to amend.  (Dkt. #3)

Depositions. (Dkt. #23) Respondents filed a Response to the Request for Depositions. (Dkt. #22)

## I. BACKGROUND

The relevant facts, as stated in Magistrate Judge Anderson's Report and Recommendation, are as follows.

### A. Trial Court Proceedings and Guilty Plea

On August 3, 2005, the State of Arizona charged Petitioner by indictment of one count of fraud, a class two felony, one count of theft, also a class two felony, three counts of taking the identity of another, class 4 felonies, and three counts of forgery, also class 4 felonies. (Dkt. #13, Exh. A) The State subsequently amended the indictment to allege four historical prior felony convictions for attempt to commit theft, dealing in counterfeit obligations, conspiracy to possess cocaine for distribution, and unlawful possession of a firearm. (Dkt. #13, Exh. C) The State further alleged that Petitioner committed his current offenses while on release from confinement from a conviction in Federal Court. (Dkt. #13, Exh. D)

Petitioner accepted and signed a plea agreement from the State on December 7, 2005. (Dkt. #13, Exh. E) Under the terms of the written plea agreement, Petitioner would plead guilty to Amended Count 1, Attempt to Commit Fraudulent Schemes and Artifices, a class 3 felony, with one prior felony conviction, and Amended Count 2, Theft. (Id.) In return, the remaining counts, the allegation of Petitioner's additional prior convictions, and the allegation that he was on parole at the time of the present offense would be dismissed. (Id. at 2) The plea agreement explained that the presumptive term for Count 1 was 6.5 years, with a super-mitigated term of 3.5 years, and a super-aggravated term of 16.5 years. (Id.) The agreement stipulated that the sentence for Count 2 would run consecutively to Count 1, but that probation was available. (Id.)

The same day, Petitioner had a change of plea hearing in Maricopa County Superior Court, (Dkt. #13, Exh. F) during which the court confirmed the terms of the plea agreement and accepted the guilty plea. (Id. at 3-4) The court specifically asked Petitioner if he understood all the terms of the plea agreement, had been forced of threatened in any manner,

was entering into the plea voluntarily, understood the range of sentences, and understood the constitutional rights he was giving up by entering such a plea. (Id. at 5-10) Petitioner assured the court that he was entering the plea knowingly and voluntarily, without force or threat, and with an understanding of the range of sentences he could receive and the constitutional rights he was waiving. (Id.)

Petitioner's attorney, Susan Maga, gave the following factual basis for the plea. As to Amended Count 1, between August and November of 2004, Petitioner, along with a woman named Tina Ricketts, worked together to take out a mortgage on the home of Lucinda Maxfield without her knowledge. (Id. at 11) Petitioner requested that Ricketts pretend to be Lucinda Maxfield to complete the mortgage paperwork, and provided her with a blond wig to do so. (Id.) After the money was received for the mortgage on Maxfield's home, Ricketts, again pretending to be Lucinda Maxfield, wired $125,000 of the mortgage proceeds to a bank account Petitioner had opened under the false name Richard Self, at the request of Petitioner, knowing it as an account opened up under a false name. (Id.) Lastly, Petitioner, along with Ricketts, was aware that a man named David Robinson was paid with the mortgage proceeds, in exchange for not telling Lucinda Maxwell about the mortgage. (Id. at 11-12) After the recitation of the factual basis, the court asked Petitioner if the facts recited were in fact true, and Petitioner answered affirmatively. (Id. at 12)

As to Amended Count 2, Ms. Maga provided the factual basis that Petitioner had committed theft by, "without lawful authority, knowingly controlling CSI Mortgage's cash with intent to permanently deprive them of the money," and opening up a fraudulent account to that end. (Id. at 13) Petitioner also attested to the truth of these facts. (Id.)

Thus, the court found that Petitioner had made the plea knowingly, voluntarily, and intelligently and that there was a sufficient factual basis for the plea. (Id. at 14)

Differences arose between Petitioner and attorney Susan Maga, and the court allowed her to withdraw and replaced her with attorney Terri Capozzi. (Dkt. #13, Exh. G, H) Petitioner then filed a motion to withdraw from the plea agreement, which the court addressed at Petitioner's sentencing hearing on May 12, 2006. (Dkt. #13, Exh. I) Petitioner

requested a continuance to call several witnesses, but the court denied the request for a continuance because the hearing had already been continued for an extensive period of time. (Dkt. #13, Exh. I at 4)  Petitioner also requested that he be permitted to testify himself, but the court also denied this request because the time was set "for oral arguments" on the motion to withdraw, and thus the court would not take testimony.  (Id. at 4)

During oral argument, Petitioner's new counsel, Ms. Capozzi, argued that because of Petitioner's poor relationship with Ms. Maga, he felt compelled to accept a plea to a longer sentence than he was comfortable with, and with a factual basis that he did not support.  (Id. at 5)  Petitioner's position was that he contested the factual basis for Amended Count 1 on the grounds that he had never supplied a wig or disguise to Tina Ricketts to pose as Lucinda Maxwell.  (Id. at 6)  Petitioner claimed that he told his former counsel, Ms. Maga, this, but that "his will was overborn" due to sleep deprivation.  (Id. at 7)  The State argued that Petitioner had been repeatedly asked by the court if the factual basis was correct, and he in each instance answered that it was.  (Id. at 8)  The State also made the point that even if the specific fact that Petitioner claimed was incorrect—that he provided the wig and disguise to Rickets—was untrue, sufficient evidence still existed for Amended Count 1, such as Petitioner's opening the fraudulent bank account and having a portion of the mortgage proceeds wired to it.  (Id. at 9)  The court then ruled denying the motion to withdraw from the plea because Petitioner had not met the burden of showing manifest injustice and proceeded to sentencing.  (Id. at 12)

After both sides and the lead detective on the case, Det. Paul Arnold, spoke, Petitioner was allowed to speak.  (Id. at 12-19)  Petitioner said something to the effect of it being a shame that no one was "interested in the truth."  (Id. at 19)  The court then found that for Amended Count 1, the presumptive term was not appropriate because of the circumstances of the crime and three aggravating factors: Petitioner's priors admitted in the plea agreement, presence of an accomplice, and the crime being committed for monetary gain.  (Id. at 22)

As a result, the court sentenced Petitioner to an aggravated term of 16.25[2] years. (Id. at 23)

On Amended Count 2, the court suspended the sentence and placed Petitioner on supervised probation for 5 years, to run consecutively with Petitioner's sentence on Count 1. (Id. at 25)

**B. First Post-Conviction Proceeding**

Petitioner filed a notice of post-conviction relief on June 16, 2006. (Dkt. #13, Exh. J)  The court granted Petitioner's request for appointed counsel, and a petition for post-conviction relief was filed on December 20, 2006. (Dkt. #13, Exh. K)  The court denied relief.

Petitioner then filed a petition for review with the Arizona Court of Appeals on May 31, 2007. (Dkt. #13, Exh. M)  The Court of Appeals denied review, (Dkt. #13, Exh. N) and Petitioner did not seek review with the Arizona Supreme Court. (Dkt. #6 at 6-9)

**C. Second Post-Conviction Proceeding**

Petitioner filed a second petition for post-conviction relief on August 27, 2007. (Dkt. #13, Exh. O)  The trial court found that pursuant to Ariz.R.Crim.P. 32.2(a), Petitioner's claims were precluded. (Dkt. #13, Exh. P)  The court rejected Petitioner's claim that he was entitled to relief because of "newly-discovered" evidence, because the evidence in question was available to Petitioner before pleading guilty, and because when he pled guilty, Petitioner waived his right to contest evidence against him. (Id.)  The court also found that Petitioner had failed to show actual innocence. (Id.)

Subsequently Petitioner filed a *pro se* petition for review with the Arizona Court of Appeals. (Dkt. #13, Exh. Q)  The Court of Appeals again denied review (Dkt. #13, Exh. R) and Petitioner did not seek review from the Arizona Supreme Court. (Dkt. #6 at 6-9)

///

---

[2]The plea agreement states that the presumptive sentence is 6.5 years and the maximum sentence is 13.0 years, but that 16.25 years is available if the trial court makes an "exceptional circumstances finding." (Dkt. #13, Exh. E)

**D. Petition for Writ of Habeas Corpus**

On August 15, 2008, Petitioner filed a timely Amended Petition for Writ of Habeas Corpus in this court. (Dkt. #6, Dkt. #13 at 6) In the petition, the following claims are raised: (1) "Violation of due process of law under the Fourteenth Amendment to the United States Constitution. Petitioner can show manifest injustice has occurred and trial court refused to hold an evidentiary hearing to allow Petitioner to withdraw from plea;" (2) Petitioner received ineffective assistance of counsel and suffered a "manifest injustice" because counsel provided an incorrect factual basis for his guilty plea; and (3) Petitioner received ineffective assistance of counsel because counsel (a) failed to subpoena witnesses to testify in support of his motion to withdraw his guilty plea, and (b) failed to object to the aggravated sentence. (Dkt. #6)

## II. STANDARD OF REVIEW

A person in custody under a state-court judgment may petition for a writ of habeas corpus in a United States district court when seeking a determination that his or her custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a)(1). However, before granting a state prisoner's federal habeas petition, the petitioner must have exhausted the remedies available in the state courts. 28 U. S. C. § 2254(b)(1)(A); Coleman v. Thompson, 501 U.S. 722, 731 (1991). Otherwise, the claims may be procedurally defaulted. If the petitioner satisfies the exhaustion requirement, habeas relief may be granted on any claim "adjudicated on the merits" by the state court only if the adjudication resulted in a decision contrary to clearly established federal law, as determined by the Supreme Court of the United States, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Court must review the factual analysis in the Report and Recommendation *de novo* for those facts to which Objections are filed. 28 U.S.C. § 636(b)(1)(C); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Objection was timely made by Petitioner. (Dkt. #22). A district court has authority to accept, reject, or modify the magistrate judge report and recommendation. 28 U.S.C. § 636(b)(1)(C). Petitioner has also

requested leave to take depositions (Dkt. #23) and Respondent has filed a Response. (Dkt. #22) Unlike a traditional civil litigant, a habeas petitioner "is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 530 U.S. 899, 904 (1997); see also Bittaker v. Woodford, 331 F.3d 715, 728 (9th Cir. 2003). Rather, the decision to grant discovery is left to the discretion of the court, discretion to be exercised where there is a showing of good cause why discovery should be allowed. Rules Governing Section 2254 Cases in the United States District Courts, Rule 6(a).

## III. PROCEDURAL DEFAULT

Respondents assert that Petitioner procedurally defaulted Ground Two and part of Ground Three, and thus those claims are barred from review. For the reasons stated below, the Court agrees.

### A. Exhaustion of State Remedies

To petition for a writ of habeas corpus in federal court, a state prisoner must first exhaust his remedies in the state courts. 28 U.S.C. 2254(b); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam). The burden is on the Petitioner to show that he has properly exhausted. Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981) (per curiam), cert. denied, 455 U.S. 1023 (1982).

To satisfy the exhaustion requirement under Arizona state law, a petitioner must either raise his claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief ("PCR") pursuant to Arizona Criminal Procedure Rule 32. See Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994). Only one of those avenues of relief must be exhausted before bringing a habeas petition in federal court. "In cases not carrying a life sentence or the death penalty, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." Castillo v.

McFadden, 399 F.3d 993, 998 n.3 (9th Cir. 2005) (quoting Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).[3]

Claims must not only be raised in the proper forum, but must be "fairly presented." That is, Petitioner must provide the state court with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; Picard v. Connor, 404 U.S. 270, 276-77 (1971). To satisfy the "fair presentment" prong, Petitioner must present both the operative facts and the federal legal theory on which the claim is based to the state's highest court. See Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, Robbins v. Carey, 481 F.3d 1143 1149 (9th Cir. 2007)). It is important to note that a petitioner's allusion to "broad constitutional principles, such as due process, equal protection, and the right to a fair trial" in their state court pleadings is not sufficient to establish that a federal constitutional claim was fairly presented to the state courts. Castillo, 399 F.3d at 999 (internal citations omitted). However, "state and federal courts are jointly responsible for the enforcement of federal constitutional guarantees," and "for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue." Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003).

The Supreme Court has emphasized that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged federal constitutional errors. See Baldwin v. Reese, 541 U.S. 27, 29 (2004). If a petitioner fails to present a claim based on a violation of a specific federal constitutional right, as opposed to the violation of a state constitutional

---

[3] Respondents, citing among other cases Baldwin v. Reese, 541 U.S. 27, 29 (2004), assert that in subsequent rulings, the U.S. Supreme Court and the Ninth Circuit have implicitly overruled Swoopes, and thus federal habeas petitioners must present their claims to the Arizona Supreme Court to meet the exhaustion requirement. (Dkt. #13 at 7, n.1) This court disagrees with that interpretation of Baldwin and continues to hold that the exhaustion requirement is met when petitioners present their federal claim to the Arizona Court of Appeals. See Crowell v. Knowles, 483 F.Supp.2d 925, 931-33 (D.Ariz. 2007) (discussing Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999)).

- 8 -

right, state rule, or state law, it has not been "fairly presented" to the state court. See id. at 33. In essence, a federal habeas petitioner has not exhausted his state remedies if he still has the right to raise the claim "by any available procedure" in state court. 28 U.S.C. § 2254(c).

Procedural default may occur when a petitioner has never presented a federal claim in state court and is now barred from doing so by the state's procedural rules. See id. at 351-52; Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988). Procedural default may also occur when a petitioner presents a claim to a state court, but the state court did not address the merits of the claim because Petitioner failed to follow a state procedural rule. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002).

A petitioner who has procedurally defaulted in state proceedings may not raise the claim in federal habeas unless the petitioner can demonstrate a miscarriage of justice, show cause and prejudice, or show actual innocence that would excuse the default. See Coleman, 501 U.S. at 750-51; Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000) (quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994)). The standard for "cause and prejudice" is one of discretion; it is intended to be flexible, yielding to exceptional circumstances only. See Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause. See Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982); and Thomas, 945 F.2d at 1123 n.10. However, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Murray v. Carrier, 477 U.S. 478, 496 (1986).

**B. Exhaustion of Petitioner's Claims**

**1. Ground One**

Petitioner's first claim is that he was deprived of the due process accorded to him by the Fourteenth Amendment when his counsel allegedly provided an incorrect factual basis at his change of plea hearing and when the trial court refused to conduct an evidentiary

hearing on Petitioner's motion to withdraw his guilty plea. (Dkt. #6 at 6) Petitioner presented this claim in his first petition for post-conviction relief. (Dkt. #13, Exh. K at 6) The trial court rejected these claims. (Dkt. #13, Exh. L) Petitioner then raised this same claim before the Arizona Court of Appeals. (Dkt. #13, Exh. M at 3,6) Thus, Petitioner properly exhausted Ground One.

**2. Ground Two**

Petitioner's second claim is that his counsel was ineffective in providing an incorrect factual basis for his guilty plea. (Dkt. #6 at 7, 12) In his first petition for post-conviction relief, Petitioner asserted that his counsel was ineffective because she provided "an incorrect factual basis." (Dkt. #13, Exh.K at 6-7) However, Petitioner failed to raise this claim in his petition before the Arizona Court of Appeals. (Dkt. #13, Exh M at 3, 6-7) Thus, with respect to this claim, Petitioner did not exhaust his remedies in Arizona state court, and it is procedurally defaulted.

**3. Ground Three**

Petitioner's third claim is that he received ineffective assistance of counsel when his counsel (a) failed to subpoena witnesses for the motion-to-withdraw/sentencing hearing and (b) did not object to the trial court's failure to give advance notice that it intended to impose a super-aggravated sentence. (Dkt. #6 at 8) In his first petition for post conviction relief, Petitioner raised both these claims. (Dkt. #13, Exh. K at 8) In his petition for review before the Arizona Court of Appeals, however, Petitioner raised the issue of subpoenaing witnesses but not of failing to object to the lack of notice of a super-aggravated sentence. (Dkt. #13, Exh. M at 3,7) Petitioner properly exhausted Claim 3(a), that his counsel was ineffective for not subpoenaing witnesses. However, Claim 3(b), that counsel was ineffective for failing to object to the super-aggravated sentence was not properly presented before Arizona courts, and is thus procedurally defaulted.

Furthermore, Petitioner has not presented evidence in either his Petition for Writ of Habeas Corpus or in his Objections to the Magistrate Judge's Report and Recommendation that shows a miscarriage of justice, cause and prejudice, or actual innocence that would

permit the Court to overlook the fact that Claim 2 and Claim 3(b) were not properly exhausted. Accordingly, the Court will dismiss these claims with prejudice.[4]

## IV. Merits of Petitioners Non-Exhausted Claims

### A. Ground One - Due Process Violation

Petitioner's first non-procedurally defaulted claim is that his due process rights were violated when the trial court failed to hold an evidentiary hearing on his motion to withdraw from the plea agreement (Dkt. #6 at 6) Petitioner's attorney requested a continuance to subpoena several individuals who Petitioner hoped to have testify and requested that Petitioner be permitted to testify; the court denied both requests, but did permit "oral arguments" on the motion. (Dkt. #13, Exh. I at 4) Petitioner asserted in his motion to withdraw that the court should allow the withdrawal of the guilty plea because the factual basis was incorrect. (Dkt. #13, Exh. V) Specifically, he contests the inclusion in the factual basis that he provided Tina Rickets with a wig and disguise to impersonate Lucinda Maxwell. (Dkt. #13, Exh. I at 5-7)

In response to Petitioner's first petition for post-conviction review, the court summarily denied this claim, stating that Petitioner's "motion stated the general facts to which he expected the witnesses to testify and the defendant's position" and also included a "deposition transcript" and "documentation from a forensic laboratory." (Dkt. #13. Exh. L at 2) At trial, the court reviewed the motion and "heard argument from counsel." (Id.) Citing State v. Valenzuela, 98 Ariz. 189, 403 P.2d 286 (1965), the court found that the trial court determined that Petitioner "knowingly and voluntarily entered into the plea agreement," and thus did not abuse its discretion. (Dkt. #13, Exh. L at 2-3)

Magistrate Judge Anderson's Report and Recommendation concluded that Petitioner failed to establish that the state court's decision was contrary to, or involved an unreasonable

---

[4]In addition to being procedurally defaulted, Grounds 2 and 3(b) are also meritless. Having concluded they are procedurally defaulted, we decline to address the merits of these defaulted claims here. However, the merits of both claims are addressed extensively in Magistrate Judge Anderson's Report and Recommendation. (Dkt. #18 at 22-28)

application of federal law, pursuant to 18 U.S.C. § 2254. The Court agrees. "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." U.S. v. Broce, 488 U.S. 563, 569 (1989); see also Boykin v. Alabama, 395 U.S. 238, 242-43 (1969); Tollet v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged . . . [h]e may only attack the voluntary and intelligent character of the guilty plea.")

The record reveals that Petitioner's guilty plea was in every respect voluntary and intelligent. Petitioner specifically attested that he understood the plea and entered into the plea free of any external promises, force, or threats, voluntarily and on his own free will. (Dkt. #13, Exh. F at 6) The trail court explained at length the constitutional rights Petitioner would be giving up if he pled guilty, and Petitioner agreed to give them up. (Id. at 9-10) Furthermore, after Petitioner's counsel recited the factual basis disputed in this petition, the court specifically asked Petitioner: "You have heard your counsel provide us the factual basis for this plea, and you heard her recite those facts. Do you agree the facts she recited are, in fact, true?" (Id. at 12, ln. 9-12) To this Petitioner answered, "Yes." (Id. at 12, ln. 13) "Solemn declarations in open court carry a strong presumption of verity." U.S. v. Rubalcaba, 811 F.2d 491, 494 (9th Cir. 1986) (quoting United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979)).

Petitioner has also failed to show that the state post-conviction court's decision to deny his claim that he should have been allowed to withdraw his guilty plea based on the allegedly inaccurate factual basis was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C.A. § 2254(d)(1). Though the state post-conviction court did not directly explain its decision or cite any Federal law, neither citation of Federal cases or even "awareness" of Federal precedent is required, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2003).

First, even assuming *arguendo* that the factual basis was flawed, it would nonetheless not give rise to a Constitutional violation. Federal Rule of Criminal Procedure 11 and Arizona Rule 17.3 require that there be a factual basis for the plea. However, neither rule of procedure is "constitutionally mandated." McCarthy v. U.S., 394 U.S. 459, 465 (1969) (citing Waddy v. Heer, 383 F.2d 789 (C.A.6th Cir. 1967)). If a plea is otherwise intelligent and voluntary, a state court is not required by the Constitution to establish a factual basis. North Carolina v. Alford, 400 U.S. 25, 37-38 (1970) ("Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the later element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.") Rodriguez v. Ricketts, 777 F.2d 527, 527-28 (9th Cir. 1985) (per curiam) (rejecting petitioner's claim that he should be granted habeas corpus relief because his guilty plea was not supported by a factual basis on the grounds that, although a factual basis is required under Arizona law, "relief under section 2254(a) can be granted only for a violation of the United States Constitution, a federal statute, or a treaty" and "the due process clause does not impose on a state court the duty to establish a factual basis for a guilty plea absent special circumstances.") Thus, Petitioner's claim that his due process rights were violated when he was not permitted to withdraw his guilty plea based on the allegedly inaccurate factual basis is not a valid Constitutional claim, because no such right to a correct factual basis exists under the United States Constitution. As a result, Petitioner's claim is based only on the state court's failure to comply with Arizona Rule of Criminal Procedure 17.3, which, as a state law claim, is not subject to habeas corpus review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions").

Second, Petitioner has not established that in rejecting his motion to withdraw his plea, the trial court unreasonably applied federal law through an unreasonable interpretation

of the facts before it.  As stated earlier, after Petitioner's counsel recited the factual basis disputed in this petition, the court specifically asked Petitioner: "You have heard your counsel provide us the factual basis for this plea, and you heard her recite those facts.  Do you agree the facts she recited are, in fact, true?"  (Id. at 12, ln. 9-12)  To this Petitioner answered, "Yes."  (Id. at 12, ln. 13)  Based on this, the trial court had a reasonable basis for accepting Petitioner's guilty plea.  Though they are not "insurmountable," "solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986) ("[S]tatements made by a criminal defendant contemporaneously with his plea should be accorded great weight.").

Had the trial court decided to conduct an evidentiary hearing on Petitioner's motion to withdraw based on the contention that the factual basis was incorrect, Petitioner would have been compelled to testify that in the above-mentioned exchange with the court, he lied in open court when he stated that the factual basis was correct.  It is very likely that the trial court would have found this testimony unreliable.  Petitioner's credibility is further impeached by the fact that immediately following the hearing on the motion to withdraw, during his sentencing hearing, he had the opportunity to speak and state on the record any factual inaccuracies in the factual basis, but rather choose to say the following: "I really don't have nothing to say.  It's a shame people is not interested in the truth, you know.  We make up all these little stories but nobody knows the truth.  It's really sad.  But I see no other thing."  (Dkt. #13, Exh. I at 19)

Third, even aside from Petitioner's statements before the court during his change of plea hearing, the record before the court supported Petitioner's guilty pleas.  Under Arizona law, "the factual basis may be ascertained from the record including presentence reports, preliminary hearing reports, admissions of the defendant, and other sources."  State v. Varela, 120 Ariz. 596, 598, 587 P.2d 1173, 1175 (Ariz. 1978).  Not only did Petitioner state on the record at his change of plea hearing that the factual basis was accurate, but other parts

of the record contradict Petitioner's after-the-fact assertions that he did not provide Ricketts with a wig and a disguise to impersonate Maxfield, and that Maxfield was involved in the scam. At sentencing, Scottsdale detective Paul Arnold, who conducted the "entire investigation," testified that based on the evidence uncovered during the investigation, he believed that Lucinda Maxfield was not involved, and that Petitioner was the "master mind" behind the scheme. (Dkt. #13, Exh. I at 15-17) The court also had the opportunity learn the contents of the police reports pertaining to the investigation that were referenced in the presentence report that detailed Petitioner's involvement in committing the crimes with co-defendant Ricketts. (Dkt. #13, Exh. S at 1)

Nor has Petitioner established that, had an evidentiary hearing been held, evidence not before the trial court during the sentencing would have been presented to combat the factual basis given by Petitioner's counsel at the change of plea hearing. On the contrary, the trial court had for its review, attached as an addendum to the state's response to the motion to withdraw, Tina Ricketts' plea agreement. (Dkt. #13, Exh. T) The plea agreement stated in its factual basis that the crime was committed "without the permission or knowledge of Lucinda Maxfield," and that "Luther Jernigan did request that Tina Ricketts dress as and pretend to be Lucinda Maxfield and did provide the blond wig Rickets wore while completing mortgage paperwork." (Id.) Had Tina Ricketts testified at such an evidentiary hearing, she likely would have testified to the same facts contained in the factual basis for her plea.

Lastly, even if the factual basis did not contain the information that Petitioner disputes, there would still be sufficient information to sustain Petitioner's guilty plea. Defendant pled guilty to Amended Count 1, Attempt to Commit Fraudulent Schemes and Artifices (Dkt. #13, Exh. E at 1), requiring that (1) pursuant to a scheme or artifice to defraud, a person (2) knowingly obtains any benefit (3) by means of false or fraudulent pretenses, representations promises or material omissions. Ariz. Rev. Stat Ann. § 13-2310(A) (2001). The factual basis states that Petitioner and Tina Ricketts "worked together"

to complete a fraudulent mortgage without the knowledge or permission of Lucinda Maxfield. (Dkt. #13, Exh. I at 11) It also stated that Petitioner opened a fraudulent account in the name of Richard Self, and that $125,000 of the mortgage proceeds were wired to that account by Tina Ricketts pretending to be Lucinda Maxfield. (Id.) Petitioner was also aware that another man by the name of David Robinson was paid money from the mortgage proceeds in exchange for not telling Lucinda Maxfield about the mortgage scheme. (Id. at 12) This information alone, without the disputed facts, would be enough to make the factual basis for the elements of the offense to which Petitioner pled guilty.

In his objections to the Report and Recommendation (Dkt. #21), Petitioner, in sum, argues that he should have been permitted to withdraw his guilty plea or at least have an evidentiary hearing based on his failure to admit an "element of [the] crime" and his "maintaining his innocence." (Id. at 5, 8) As described above, Petitioner has done neither. The facts that Petitioner dispute do not constitute an element of the crime, nor has he at any point asserted actual innocence, only that he disputes certain parts of the factual basis.

For these reasons, the Court agrees with the Report and Recommendation that the state court's rejection of Petitioner's challenge to the trial court's denial of his motion to withdraw his guilty plea was not contrary to, or an unreasonable application of, federal law. (Dkt. #18)

**B. Ground Two**

Petitioner's second asserted ground for relief is that trial counsel, Susan Maga, was ineffective at the change of plea hearing because she "provided an incorrect factual basis for the plea." (Dkt. #6 at 7) While this court declines to address the merits of this claim because it has been procedurally defaulted,[5] they are addressed at length in Magistrate Judge Anderson's Report and Recommendation. (Dkt. #18 at 22-26) The Report and

---

[5]Petitioner's objections to the Report and Recommendation do not address the procedural default of Ground Two. (Dkt. #21 at 9-11) Therefore, this court does not address Petitioner's objections to Ground Two here.

Recommendation concludes that "Petitioner fails to establish that counsel was ineffective with respect to the factual bases for his guilty pleas or for leading the court to believe that Petitioner was the mastermind behind the mortgage scheme." (Dkt. #18 at 26) The Court agrees with the Magistrate Judge's analysis.

### C. Ground Three

Petitioner's third claim is that he received ineffective assistance of counsel when his counsel (a) failed to subpoena witnesses for the motion-to-withdraw/sentencing hearing and (b) did not object to the trial court's failure to give advance notice that it intended to impose a super-aggravated sentence. (Dkt. #6 at 8) Petitioner properly exhausted Claim 3(a), that his counsel was ineffective for not subpoenaing witnesses. However, Claim 3(b), that counsel was ineffective for failing to object to the super-aggravated sentence was not properly presented before Arizona courts, and is thus procedurally defaulted. Thus, this court declines to address the merits of defaulted Claim 3(b) here, although they are addressed at length in the Report and Recommendation. (Dkt. #18 at 26-28) Again, the Court agrees with the Magistrate Judge's analysis.

Petitioner's non-defaulted claim is that he received ineffective assistance of counsel when his counsel failed to subpoena witnesses for the motion-to-withdraw/sentencing hearing. (Dkt. #6 at 8) In Strickland v. Washington, 466 U.S. 668 (1984), the U.S. Supreme Court described the two-prong test for ineffective assistance of counsel. First, counsel's performance must be deficient, and second, the defendant must show that the deficient performance prejudiced the defense. Id.

To prevail on the first prong of the Strickland test, Petitioner must show that counsel did not provide "reasonably effective assistance" and that counsel's performance "fell below an objective standard of reasonableness." Id. at 687-88. A reviewing court will give a high level of deference when reviewing counsel's performance. Id. at 689. The standard that counsel's conduct must meet is "reasonably effective assistance," Id. at 687, and a reviewing court will "indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Second, to prevail on a claim of ineffective assistance of counsel, the error must prejudice the defense. Id. at 692. To show that the alleged deficiency prejudiced the defense, Petitioner must show that there is a "reasonable probability" that, but for counsel's alleged errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.; Oritiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).

Petitioner's attorney's failure to subpoena the witnesses in question does not fall below the standard of reasonably effective assistance. Petitioner challenges counsel's failure to subpoena four individuals, Lucinda Maxfield, David Robinson, William Flynn, and Stacey Scaife, in support of his motion to withdraw. (Dkt. #6 at 9) The decision whether or not to subpoena certain witnesses is within "the sound professional judgment of the trial lawyer." Gustave v. United States, 627 F.2d 901, 904 (9th Cir. 1980). Petitioner's attorney attempted to get in contact with the four individuals in questions, but was "unable to get return of service on those individuals." (Dkt. #13, Exh. I at 4) Moreover, she asked for a continuance to attempt to have them at the hearing, but the court denied the request because the matter had already been continued several times. (Id.) Though she was not able to have any of those individuals present at the hearing, counsel supported her motion to withdraw with forensic documentation and excerpts from Scaife's deposition in a related civil case. (Dkt. #13, Exh. V)

Next, counsel's allegedly deficient performance did not prejudice Petitioner. The court had before it the motion to withdraw from the guilty plea, had reviewed the motion, and clearly believed it had enough information to proceed based on the pleadings before it and oral argument from the attorneys. (Dkt. #13, Exh. I at 3-4) The motion itself contained "the general facts to which [Petitioner] expected the witnesses to testify," and still the court

believed it could proceed without the witnesses's testimony. (Dkt. #13, Exh. L, Exh. I at 3-4) Essentially, Petitioner "failed to show a reasonable probability that the result of the proceeding would have been different had counsel secured the attendance of the witnesses at the hearing on the motion to withdraw the plea agreement." (Dkt. #13, Exh. L. at 3)

Additionally, there is no basis to believe that the witnesses's testimony would have shown the factual basis was incorrect. Petitioner did not present any evidence that Maxwell would have testified she was involved in the scheme, and in fact Detective Arnold's testimony directly contradicts this proposition. (Dkt. #13, Exh. I at 15-17) Scaife's testimony was before the court for its consideration, as portions of her testimony in a deposition for the civil case were attached to the motion to withdraw. (Dkt. #13, Exh. V) Robinson had already admitted to police that Petitioner paid him to keep the scheme hidden from Maxfield. (Dkt. #13, Exh. S at 1) As for William Flynn, Petitioner has not explained his relationship to the case, nor has he shown how his testimony would have supported the motion to withdraw.

Lastly, as mentioned above, without the part of the factual basis that Petitioner disputes, adequate facts still would exist to serve as a factual basis for Petitioner's plea. Even assuming *arguendo* that these witnesses had testified, and supported Petitioner's version of the facts, the trial court would still have had good cause to deny the motion to withdraw. Thus, Petitioner has not shown that had these witnesses been subpoenaed, there is a "reasonable probability" that the outcome would have been different.

In his objections, Petitioner claims that his right to effective assistance of counsel was denied because his trial counsel failed to "properly prepare a defense" for the hearing on the motion to withdraw. (Dkt. #21 at 12) On the contrary, as detailed above, the record shows that Petitioner's counsel attempted to contact the four individuals in question, (Dkt. #13, Exh. I at 4), prepared and filed a Motion to Withdraw from the Plea Agreement over a month in advance of the hearing that contained thorough legal and factual research and was supported by exhibits, (Dkt. #13, Exh. V), and argued the motion vigorously before the court. (Dkt.

#13, Exh. I at 4-8)  Petitioner therefore fails to demonstrate that his counsel's performance fell below an objective standard of reasonableness.

## V. REQUEST FOR DEPOSITIONS

On July 27, 2009, Petitioner filed a request for depositions, asking that the court order the deposition of four witnesses: Chris Jernigan, Catherine Richard, Elizabeth Payne, and Tina Ricketts.  (Dkt. #23)  The sum of Petitioner's reasons for filing the request is that "[t]he four witnesses can provide supporting facts to prove Petitioner's claims of constitutional violations and actual innocence."  (Id.)

Petitioner's request is denied because (1) it is untimely, (2) it is too vague to show good cause and (3) Petitioner was not diligent in present these allegations of new discovery in state court.

### A. Petitioner's Request is Untimely

Petitioner has filed his initial petition for habeas corpus, received Respondents' answer, reviewed the Magistrate Judge's report and recommendation, and filed objections himself.  (Dkt. #6, #13, #18, #21)  Yet at no point up until this request has he requested leave to take depositions, nor has he mentioned in any previous filing three of the four names on the list.  Parties are not permitted to "fully litigate their case before the magistrate, and if unsuccessful, to change their strategy and present a different theory to the district court." Greenhow v. Sec'y of Health and Human Services, 863 F.2d 633, 638 (9th Cir. 1988) (overturned on other grounds by U.S. v. Hardesty, 977 F.2d 1347 (9th Cir. 1992)).  Thus, Petitioner's request is not timely.

### B. Petitioner's Request is Too Vague to Show Good Cause

Rule 6 of the Rules Governing Section 2254 Cases allows that, "[a] judge may, for good cause, authorize a party to conduct discovery."  Rule 6(a).  However, "[a] party requesting discovery must provide reasons for the request."  Rule 6(b).  In his request, Petitioner provides no reasons why the four specific individuals mentioned should be

deposed. (Dkt. #23) Federal habeas corpus is not designed to be a "fishing expedition for habeas petitioners to explore their case in search of its existence." Rich v. Calderon, 187 F.3d 1064, 1067 (9th Cir. 1999) (internal quotations omitted). Aside from general claims that the four witnesses will support Petitioner's claim of constitutional violations and actual innocence, Petitioner does not provide reasons to lead the court to believe there is good cause to authorize the discovery request. Petitioner fails to explain what facts he hopes to develop with these depositions, and how they are related to his claims.

## C. Petitioner Was Not Diligent In Pursuing These New Facts In State Court

28 U.S.C. § 2254(e)(2) requires: "If [a Petitioner] has failed to develop the factual basis of a clam in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows . . . a factual predicate that could not have been previously discovered through the exercise of due diligence." The U.S. Supreme Court has held that this provision applies to "Petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) (referencing the Supreme Court's holding in Holland v. Jackson, 542 U.S. 649, 653 (2004)).

Petitioner was required by Arizona law to include in his petition for post-conviction relief, "[a]ffidavits, records, or other evidence currently available to the defendant supporting his allegations of the petition." Ariz. R. Crim. P. 32.5. Since Petitioner at no time during his post-conviction proceedings attempted to establish, through an affidavit or otherwise, the need to develop the record regard these four persons, it cannot be said that any of these witnesses can provide "a factual predicate that could not have been previously discovered through the exercise of due diligence" during state court proceedings. "Diligence for purposes of the opening clause [of § 2254(e)(2)] depends on whether [Petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Cooper-Smith, 387 F.3d at 1241 (quoting Williams v. Taylor, 529 U.S. 420, 435 (2000)).

Because Petitioner did not make a diligent effort in state court proceedings to create a record regarding these four persons, his request to depose them during the course of federal habeas corpus review is denied.

**Accordingly,**

**IT IS HEREBY ORDERED** adopting the Report and Recommendation of the Magistrate Judge in its entirety as order of this Court. (Dkt. #18)

**IT IS FURTHER ORDERED** denying and dismissing the Amended Petition for Writ of Habeas Corpus with prejudice. (Dkt. #6)

**IT IS FURTHER ORDERED** denying the Request for Depositions. (Dkt. #23)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 23rd day of November, 2009.

_____
Mary H. Murguia
United States District Judge